## CIGNA Insurance Co.
## v.
## The Home Indemnity Co.
*[Cite as 3 AOA 165]*

*Case No. 56890/56898/56916/56917/56958*
*Cuyahoga County, (8th)*
*Decided May 3, 1990*

*John B. Robertson, William A. Meadows, Attorneys at Law, Sixth Floor, Bulkley Building, Cleveland, Ohio 44115, for Plaintiff-Appellant.*

*James W. Barnhouse, Attorney at Law, 1100 Illuminating Building, Cleveland, Ohio 44113, for Defendant-Appellee.*

*Thomas C. Brown, Attorney at Law, 185 Water Street, Geneva, Ohio 44041, for Defendant-Appellant, Daniel Baer.*

*Brent M. Buckley, Howard E. Coburn, Attorneys at Law, 900 Park Plaza, Cleveland, Ohio 44114-3516, for Defendants-Appellants, David Hatala, Dino Hatala and The Chubb Group of Insurance Companies.*

*Marc W. Groedel, Attorney at Law, 113 St. Clair Building, Seventh Floor, Cleveland, Ohio 44114, for Defendant-Appellant, Central Transport, Inc.*

*Larry Miltner, Attorney at Law, 800 Baker Building, 1940 East Sixth Street, Cleveland, Ohio 44114, for Defendant-Appellant, R & E Leasing.*

SWEENEY, J.

This consolidated appeal involves the following parties who have filed briefs: Plaintiff-appellant Cigna Insurance Company ("Cigna"); defendant-appellant Daniel Baer ("Baer"); defendants-appellants David Hatala, Dino Hatala and The Chubb Group of Insurance Companies ("Chubb"); and defendant-appellee Home Indemnity Company ("Home"). The foregoing appellants appeal from the trial court's granting of Home's motion for summary judgment and denying of cross-motions for summary judgment filed by appellants Chubb and Cigna. For the reasons adduced below, we affirm the trial court's decision.

A review of the record reveals that the claims giving rise to this litigation occurred on March 28, 1985. On that date, Dino Hatala, a minor, was operating a 1981 Audi 5000S, which collided with a vehicle driven, in his duties as an employee, by Daniel Baer. Mr. Baer sustained serious injuries in the accident. At the time of the crash, the Hatala vehicle was titled to R & E Leasing Company ("R&E"). R&E leased the Audi to Shan-Rod, Inc. ("Shan-Rod"), who employed David Hatala, Dino's father.[1] The Audi was used by David Hatala as a company perk. The Audi's insurance was initially maintained on a liability policy issued by Home to Shan-Rod and Huron Fabricators, Inc. ("Huron"), which provided five hundred thousand dollars in primary coverage. R&E was added to the policy's coverage as an additional insured/lessor.

By December 1984, R&E had retired the financing loan debt owed on the Audi and now owned the car free and clear. It was Mr. Rodwancy's practice at such a time to give the company car to the employee who had used it in his duties. By letter dated December 19, 1984, R&E notified David Hatala that:

"(1) ownership of the Audi was being transferred to David Hatala as 'Driver of Record' effective December 20, 1984 for the sum of one dollar; and

"(2) that after December 31, 1984, company insurance would cease, and then David Hatala would be responsible for providing insurance on the vehicle."

David Hatala's personal automobile policy issued by Cigna, effective January 1, 1985, reflects the addition of the Audi 5000S to the policy, which provided three hundred thousand in primary coverage. Shan-Rod's policy issued by Home reflected, effective January 1, 1985, the elimination of coverage on the Audi 5000S in question. Chubb issued a personal excess liability policy to David Hatala covering the Audi.

Prior to the filing of the motions for summary judgment herein, Cigna and Chubb settled the personal injury claims of Daniel Baer.[2] It is the belief of Cigna and Chubb that Home had primary coverage applicable to the personal injuries of Mr. Baer. Home denied that it had coverage under the provisions of its policy to Shan-Rod and refused to share in the settlement or loss.

I.

The assignments of error may be summarized as whether Home provided the Audi with coverage under its policy with Shan-Rod for the damages sustained by Mr. Baer.

The appellants allege that the Home policy did provide coverage to the Hatalas at the time of the accident. Appellants rely on allegedly ambiguous language in the Home policy concerning definitions of covered automobiles.

On the declarations page of the Home policy, at Item Two-Schedule of Coverages and Covered Autos, a number one (1) is typed in the liability insurance block under the column designated "Covered Autos." Pursuant to Item Three contained in the declarations, use of the numerical number one as a symbol means "ANY AUTO." Thus, any auto was a covered auto.

The alleged ambiguity exists, according to the appellants, in connection with "Item Four - A Schedule of Covered Autos You Own" in the declarations of the Home policy. Item Four described a number of autos, including the Audi. Appellants claim that the Home policy never defines the significance of Item Four, which conflicts with the language of Item Two extending coverage to "any auto" leased by Shan-Rod.[3] Any claimed ambiguity must be liberally construed in favor of the insured. *King* v. *Nationwide Ins. Co.* (1988), 35 Ohio St. 3d 208.

Appellants also rely on the allegation that R&E still owned the Audi on the date of the crash because title had not yet passed to David Hatala. The significance of this is that the Audi would presumably be a covered auto under the Home policy and Dino Hatala would be a covered person under that policy because he had permission to use the Audi from his father, David Hatala. *See,* Part IV, paragraph D(2) of Home policy.

First, was the Audi owned by R&E at the time of the crash for purposes of determining coverage under the Home insurance policy? Appellants believe that R&E was the owner of the vehicle because the legal title had not yet passed to Hatala. *See,* Certificate of Title Act at R.C. 4505.04. We disagree. This issue was addressed in *Smith* v. *Nationwide Mut. Ins. Co.* (1988), 37 Ohio St. 3d 150, thusly:

"The criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident."
Syllabus.

R.C. 1302.42(B) provides:

"Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; * * *"

In the present case, R&E notified David Hatala that ownership in the Audi was being transferred to Hatala effective December 20, 1984 and that R&E would maintain insurance on the vehicle through December 31, 1984. Home, pursuant to the request of its insured, deleted coverage on the Audi as of January 1, 1985. David Hatala added the Audi to his personal auto insurance policy with Cigna effective January 1, 1985 and with Chubb's excess liability policy effective May 4, 1985. Hatala considered himself to be the owner of the vehicle at the time of the accident. *See,* Hatala deposition, p. 29-30. Cigna paid Hatala for the collision loss, not R&E. *See,* Hatala deposition, p. 26. Reviewing the evidence in a light most favorable to the appellants, David Hatala was the owner of the motor vehicle under the U.C.C. test. Having identified the owner, "claims to insurance benefits attach to the owner's insurer," i.e., Cigna and Chubb. *Smith, supra,* p. 153.

Any alleged ambiguity between Item Two and Item Four was rendered meaningless as of January 1, 1985, when the Audi in question was deleted as a covered auto by endorsement under the Home policy. The Audi not being a covered

auto, Dino Hatala fails to qualify as an insured under the Home policy on the date of the accident, March 28, 1985.

Assignment overruled as there is no genuine issue of material fact.

*Judgment affirmed.*

DYKE, P.J., concurs.
PRYATEL, J., concurs in judgment only.

---

[1] R&E, Shan-Rod and Huron Fabricators, Inc. are owned by Robert Rodwancy.

[2] Cigna paid its insured, David Hatala, for the collision loss on the Audi.

[3] The Chubb brief, p. 11, fn. 8, details the conflict:

"The only apparent purpose of the schedule contained in ITEM FOUR would be if Shan-Rod had elected differently than it did and had, instead, chosen under ITEM TWO to purchase the coverage provided by symbol 7 as defined by ITEM THREE:

'Symbol  *Description*

'7      = specifically described autos

'Only those autos described in ITEM FOUR for which a premium        charge is shown * * *' "